```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- X
                                       :
EDWARD ABREU,                          :
                                       :
                         Petitioner,   :   20cr52-2 (DLC)
                                       :   21cv10122 (DLC)
             -v-                       :
                                       :   OPINION AND ORDER
UNITED STATES OF AMERICA,              :
                                       :
                         Respondent.   :
                                       :
-------------------------------------- X
```

APPEARANCES:

For petitioner Edward Abreu:
Andrew H. Freifeld
Andrew Freifeld, Esq.
P.O. Box 3196
New York, NY 10008

For the United States of America:
Thomas John Wright
U.S. Attorney's Office for the Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007

DENISE COTE, District Judge:

Petitioner Edward Abreu ("Abreu") asserted in his petition for a writ of habeas corpus pursuant to Title 28, United States Code, Section 2255, that his trial counsel advised him that he "could not file a[n] appeal." On October 12, 2023, the Second Circuit Court of Appeals vacated this Court's December 13, 2021 Opinion and Order denying the petition and remanded the case for proceedings consistent with its order. As explained below, the Government has shown by clear and convincing evidence that

Abreu's trial counsel did not advise him that he could not file an appeal.

## Background

The record on remand establishes the following. On February 15, 2020, Abreu was arrested. He retained Cohen, Frankel & Ruggiero, LLP to represent him. Mark Cohen and his partner Peter Frankel represented Abreu thereafter through sentencing. During that representation, Abreu never expressed to either attorney that he was anything other than completely satisfied with their work on his behalf.

When the two attorneys met with Abreu at his initial presentment, Abreu told them that he knew he was in grave legal danger, that he would be satisfied with a sentence of ten years' imprisonment, and that they should try to negotiate such a sentence or a better sentence.

On March 5, Abreu was indicted on a single count of participating in a conspiracy to distribute five kilograms or more of cocaine and 280 grams or more of cocaine base, otherwise known as crack. The charge carried a mandatory minimum term of imprisonment of ten years pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 846, among other penalties. At the time of the arraignment on March 12, Abreu and his attorneys had a conversation about his sentencing goals similar to their earlier conversation.

At a conference on March 26, a trial date of November 2 was set.  In their conversations over the ensuing months, defense counsel reviewed discovery materials with Abreu, who was incarcerated in the MCC.  Abreu agreed with their assessment that he would likely be convicted at trial and was ineligible for relief from the statutory mandatory minimum sentence of ten years' imprisonment because of his criminal record.  He agreed as well with their assessment that his ability to receive a lesser sentence would be dictated by his decision to cooperate with the Government or by defense counsel's ability to convince the Government to accept a plea to a lesser included offense.  Abreu declined to cooperate with the Government.  Defense counsel succeeded, however, in negotiating a plea to a lesser included offense that carried a mandatory minimum sentence of five years' imprisonment.

Both defense counsel met with Abreu on November 9, 2020 and thoroughly reviewed a proposed plea agreement ("Agreement") with the Government.  That review included a review of its appellate waiver.  The Agreement was premised on Abreu pleading guilty to a lesser included drug conspiracy charge, and Abreu was appreciative of his attorneys' success in their negotiations with the Government.

Defense counsel met with Abreu again on January 12, March 12 and 22, and April 5, 2021, to discuss a Curcio issue and to

3

ensure that Abreu was familiar with all the terms of the Agreement and prepared for the anticipated Rule 11 plea allocution.  In those discussions, his counsel explained to Abreu that he would be agreeing that his Guidelines range was 97 to 121 months' imprisonment, and that, so long as the Court did not impose a higher sentence, he would be waiving his right to challenge his term of imprisonment, the amount of a fine, and the "supervised release term, etc."  His attorneys advised him of his "residual" appellate rights, specifically his right to appeal his sentence based upon any post-sentencing decision by him that defense counsel's work on his behalf had been ineffective.

A Curcio hearing was held on March 24.  During the hearing, Abreu expressed his desire to keep his attorneys.  He explained that he trusted them.

Pursuant to the Agreement, Abreu entered a plea of guilty on April 14, 2021 to a lesser included offense during a videoconference.[1]  The lesser included offense was participation in a conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 841(b)(1)(B).  This charge carried a mandatory minimum term of imprisonment of five years, among

---

[1] Because of the COVID-19 pandemic, Abreu had been given the option to come to Court to enter his plea or to proceed through a videoconference.  Abreu chose the latter option.

other penalties.  Abreu acknowledged under oath that he had conspired with others to sell 500 grams or more of cocaine, that he expected to make money from his role in the conspiracy, and that he knew at the time that his conduct violated the law. Abreu also stated he understood that his sentence would be determined based on a consideration of all relevant materials and the factors set forth in 28 U.S.C. § 3553(a).  And he said he understood that his sentence would be binding even if it was different than the calculation included in the Agreement.

In his allocution, Abreu confirmed that he had read the Agreement with care, that he had discussed it with his attorney, that he had authorized his attorney to sign the Agreement on his behalf, and that he believed he had a good understanding of the Agreement's terms.  In the Agreement, the parties stipulated that the offense level was 29 and that Abreu's criminal history category was II, resulting in a Sentencing Guidelines range of 97 to 121 months' imprisonment.  In a waiver of certain appellate rights, Abreu agreed not to "file a direct appeal; nor bring a collateral challenge, including but not limited to an application under Title 28, United States Code, Section 2255 and/or Section 2241, of any sentence within or below the Stipulated Guidelines Range of 97 to 121 months' imprisonment." Abreu further agreed "not to appeal or bring a collateral challenge of any term of supervised release that is less than or

equal to the statutory maximum." The Agreement expressly stated that "nothing in this paragraph shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise. Rather, it is expressly agreed that the defendant reserves those rights."

Abreu was present in the courtroom and sentenced on July 30, 2021. Abreu was sentenced principally to 120 months' imprisonment to be followed by a term of supervised release of four years with several conditions. At the end of his sentencing, the Court advised Abreu of his right to appeal, noting that he could apply for leave to appeal in forma pauperis and that any notice of appeal must be filed within 14 days of the judgment of conviction. Abreu asserts that this statement did not register with him because he was so distressed with the length of the sentence he had just received.

Defense counsel asserts that after the sentencing he reminded Abreu of his right to assert an ineffective assistance of counsel claim. Abreu disputes that.

It is undisputed that Abreu did not instruct his attorneys to file a notice of appeal and that he did not file an appeal. At no time did Abreu advise his attorneys that they had been ineffective.

On November 29, 2021, Abreu, proceeding pro se, filed a petition for a writ of habeas corpus pursuant to § 2255.  In his petition, Abreu asserts that his counsel provided ineffective assistance by advising him that he could not file an appeal and because his attorneys did not challenge this Court's jurisdiction in this case.  In an Opinion and Order of December 13, Abreu's petition was denied.  Abreu v. United States, 21cv10122 (DLC), 2021 WL 5909634 (S.D.N.Y. Dec. 13, 2021)("December 2021 Opinion").  Abreu appealed the December 2021 Opinion.

On October 12, 2023, the Second Circuit Court of Appeals vacated the December 2021 Opinion.  It held that, where a defendant does not ask the attorney to file an appeal, then the question turns on whether the lawyer violated the duty to consult with the client.  Where an attorney mistakenly advises the defendant that there is no right to appeal, then habeas relief is warranted unless the Government shows by clear and convincing evidence that the defendant had independent knowledge of his right to appeal and elected not to do so, or in fact did appeal.  Stated differently, where a defendant receives erroneous information about the right to appeal, the defendant is presumed to have shown a deficiency and prejudice, and the burden shifts to the Government to show by clear and convincing evidence that the defendant had independent knowledge of the

right to appeal.  Abreu's knowledge of his Agreement, and its description of his appeal rights, along with the Court's notice to Abreu at the conclusion of his sentence of his right to appeal did "not conclusively establish that Abreu is entitled to no relief."  <u>Abreu v. United States</u>, No. 22-13, 2023 WL 6632951, at *3 (2d Cir. Oct. 12, 2023).

The mandate issued on December 4, 2023.  On January 5, the Court appointed new counsel for the petitioner.  On April 4, 2024, the petitioner's former counsel provided an affidavit to the Government.  On May 30, the Government filed its response to Abreu's petition.  On July 1, Abreu filed his reply.  On July 29, the Government was ordered to file a response to Abreu's reply, and it did so on August 16.

## Discussion

In his petition for relief under § 2255, Abreu alleges that his counsel provided him ineffective assistance.  Claims of ineffective assistance of counsel are assessed under the well-established standard set forth by the Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  To establish ineffective assistance of counsel, a defendant "must show that the counsel's performance was (a) 'deficient' according to 'an objective standard of reasonableness,' and (b) 'prejudicial,' meaning 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have

8

been different.'" Thomas v. United States, 93 F.4th 62, 65 (2d Cir. 2024) (quoting Strickland, 466 U.S. at 687-88, 692-94).

"Courts reviewing ineffective assistance of counsel claims are highly deferential, and must strongly presume that counsel made all significant decisions in the exercise of reasonable professional judgment." United States v. Rosemond, 958 F.3d 111, 121 (2d Cir. 2020) (citation omitted). But a defendant "is presumed to have shown deficiency and prejudice under Strickland" when his attorney mistakenly advises him that there is no right to appeal. Thomas, 93 F.4th at 66. In such a case, the burden "shifts to the government to show by clear and convincing evidence that the defendant actually appealed or had independent knowledge of his right to appeal and elected not to do so." Id. (citation omitted).

When a notice of appeal is not filed and a defendant has not explicitly told his attorney not to file a notice of appeal, the question becomes whether counsel consulted with the defendant about an appeal. Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000). Counsel "has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."

Id. at 480.  Whether the conviction follows a plea of guilty is "highly relevant" to this inquiry.  Id.  When the defendant pleads guilty, "the court must consider such factors as whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights."  Id.  The question is whether counsel's choices "were reasonable."  Id. at 181.  To show prejudice from any failure to consult, a defendant "must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed."  Id. at 484.  Evidence that there were nonfrivolous grounds for appeal or that the defendant "promptly" expressed a desire to appeal "will often be highly relevant in making this determination."  Id. at 485; see Thomas, 93 F.4th at 65-66; Galviz Zapata v. United States, 431 F.3d 395, 397 (2d Cir. 2005).

Abreu asserts in his petition that his attorneys advised him that he "could not appeal."  In his May 12, 2024 affidavit,[2] Abreu does not deny that his counsel told him that he had the right to appeal an ineffective assistance of counsel claim, even though he does not remember receiving such advice.  Despite this

---

[2] Abreu's May 12, 2024 affidavit was submitted in response to his prior counsel's affidavit, which accompanied the Government's opposition to his petition.

10

acknowledgment, Abreu continues to assert that he didn't instruct his attorney to file an appeal "because they told me that under the terms of the Plea Agreement, I had no right to appeal."

Abreu retained and was represented following his arrest and through sentencing by experienced, highly regarded, and well qualified counsel. The Government has shown by clear and convincing evidence that they did not tell him that he had no right to appeal. His Agreement advised him that he had the right to bring ineffective assistance of counsel claims in an appeal, his attorneys represent that they repeatedly advised him of that reserved right, and he does not deny that they did so. In fact Abreu asserted ineffective assistance of counsel claims in his timely-filed petition. Abreu explains that months after his sentencing he came to believe that his attorneys had been ineffective. The Government has carried its burden of showing by clear and convincing evidence that his assertion that his counsel told him that he had no right to appeal is not credible. Given the record developed on remand, no hearing is required to explore this issue further.[3]

---

[3] While Section 2255 provides for a hearing to "determine the issues and make findings of fact" raised by a petition, 28 U.S.C. § 2255(b), a "district court has discretion to determine if a testimonial hearing will be conducted." Thomas, 93 F.4th at 66 (citation omitted). A court may discharge its obligation to inquire into a defendant's claim that he was denied his right

In his May 12 affidavit Abreu does not dispute that his attorneys may have told him that he had the right to bring an appeal asserting an ineffective assistance of counsel claim.  He simply says that he doesn't recall his attorney saying that and that in any event he didn't come to believe that his attorneys had been ineffective until some months had passed.  This is a significant admission by Abreu.  Advice by his counsel that he retained the right to appeal ineffective assistance of counsel claims despite the waiver of certain appeal rights in the Agreement is far different than his assertion in his petition that his counsel told him he had no right to appeal.

Abreu's admission that his attorneys may have told him of his right to bring ineffective assistance of counsel claims in an appeal is at odds, however, with his continued assertion in that same May 12 affidavit that his attorneys told him that "under the terms of the Plea Agreement, I had no right to appeal."  Read in context, this must be understood as an accurate description of the Agreement's waiver.  Abreu emphasizes that he was distressed by the length of the sentence he received, that is, 120 months' imprisonment.  But his attorneys had advised him and he understood that by entering the

---

to appeal "by accepting affidavits from the defendant's prior counsel, including those filed as part of the government's opposition papers."  Id.

Agreement he could not appeal that sentence because it did not exceed the Agreement's stipulated Sentencing Guidelines range. That advice was accurate and Abreu's current counsel does not suggest otherwise.

This Court finds that Abreu was not told by his attorneys that he could not appeal.  Abreu was advised in his Agreement, by his counsel, and by this Court that he had the right to appeal.

The submission by recently-appointed counsel for Abreu may be read, however, to raise a different issue.  Abreu argues that his attorneys' advice regarding his right to appeal was not complete.  He argues that they should have advised Abreu that he retained the right to appeal more than ineffective assistance of counsel claims.

Abreu's current counsel identifies two additional issues for which Abreu retained the right to appeal.  "An appeal waiver included in a plea agreement does not bar challenges to the process leading to the plea." United States v. Lloyd, 901 F.3d 111, 118 (2d Cir. 2018).  Moreover, the appeal waiver in the Agreement did not include a waiver of the right to bring an appeal addressed to the conditions of supervised release imposed as part of the sentence.  Conditions of supervised release have become a recent focus of Second Circuit jurisprudence, see, e.g., United States v. Oliveras, 96 F.4th 298, 313-16 (2d Cir.

13

2024); United States v. Sims, 92 F.4th 115, 126-29 (2d Cir. 2024), and the Government's standard plea agreement now includes waiver language that encompasses those conditions.  Its recent agreements include the following, which was absent from Abreu's Agreement: "The defendant further agrees not to appeal or bring a collateral challenge of any term of supervised release that is less than or equal to the statutory maximum or any condition of supervised release imposed by the Court for which he had notice . . . ." (emphasis added).

While district courts must on remand proceed in accordance with the appellate court's mandate, the Second Circuit has explained that when its "mandate leaves issues open, the lower court may dispose of the case on grounds not dealt with by the remanding appellate court." Callahan v. County of Suffolk, 96 F.4th 362, 367 (2d Cir. 2024) (citation omitted).  The Court of Appeals remanded this case for this Court to inquire into whether Abreu was independently aware of his right to appeal and chose not to exercise that right.  Abreu has now been found to have been advised that he had the right to appeal.  Nevertheless, Abreu now raises the question whether his prior counsel failed to consult with him adequately regarding his right to appeal.  Further briefing will be allowed on that question.

## Conclusion

Abreu's November 29, 2021 petition for a writ of habeas corpus is denied to the extent Abreu asserts that his attorney told him that he had no right to appeal.  A scheduling order permitting further briefing accompanies this Opinion.

Dated:  New York, New York
        August 29, 2024

                                    _____
                                           DENISE COTE
                                    United States District Judge